FILED

2008 Jul-08  PM 01:14
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| SANDRA F. JONES, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 5:07-CV-0726-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

Plaintiff, Sandra F. Jones, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI").  Ms. Jones timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Jones was thirty-nine years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a tenth grade education.  Tr. at

21.  Her past work experience includes employment as a nurses aide, flat lock sewing machine operator, salvager, fast food worker, and waitress.  *Id.* Ms. Jones claims that she became disabled on June 27, 2003, due to a learning disability, wrist pain, and leg pain.  *Id*.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the

analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Jones meets the nondisability requirements for a period of disability and DIB and was insured through September 30, 2005.  Tr. at 21.  He further determined that she has not engaged in substantial gainful activity since the alleged onset of her disability.  *Id.*  According to the ALJ, Plaintiff's status post open reduction and intramedullary rodding of the left femur; status post open reduction and internal fixation of an ulnar shaft fracture; status post reduction and percutaneous pinning of the right distal radius fracture; and borderline intellectual functioning are impairments which are considered "severe" based on the requirements set forth in the regulations.  *Id*. at 23.  However, he found that these impairments neither met nor medically equaled, either singly or in combination, any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.  *Id*.  The ALJ did not find Ms. Jones's allegations to be totally credible, and he determined that Plaintiff has the residual functional capacity to perform work at the light exertional level with additional restrictions.  *Id*. at 26.  According to the ALJ, Plaintiff is limited in her ability to perform pushing and pulling with the lower extremities and she is restricted from climbing.  Further, the ALJ determined

that Plaintiff should avoid concentrated exposure to extreme cold, humidity, and vibration. *Id*.

According to the ALJ, Ms. Jones's past relevant work as a cashier, waitress, and salvager does not require the performance of work-related activities precluded by her residual functional capacity. *Id*. Because Plaintiff can perform her past relevant work, the ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." *Id*.

II.    Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh

evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion.

Ms. Jones alleges that the ALJ's decision should be reversed because it is not supported by substantial evidence and applicable law for five

reasons. (Doc. 7.) First, Plaintiff claims that the ALJ should have included her heel fracture as an impairment which satisfies the twelve month threshold period of disability. *Id*. Specifically, Plaintiff argues that "[n]othing in the records . . . indicates when or even if the fractures healed[.]" *Id.* Second, Plaintiff argues that the ALJ erred in failing to accord greater weight to the opinion of Plaintiff's treating sources. *Id.* Thirdly, Plaintiff contends that the ALJ improperly failed to consider Plaintiff's weight in making his RFC determination. *Id*. Fourth, Plaintiff claims that the ALJ failed to discuss any of Plaintiff's testimony before determining that her allegations of pain lacked credibility. *Id*. Finally, Plaintiff argues that the ALJ failed to fully develop the record with regards to the medical evidence. *Id*.

   A.    Effect of Heel Fracture.

   Plaintiff contends that the ALJ failed to adequately consider the effect of her heel fracture in combination with the other impairments in determining her RFC.

   According to the regulations, the term"disability" means an "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).   *See also*, Barnhart v. Walton, 535 U.S. 212, 217 (2002) (holding that a claimant's impairments and inability to work must last for a continuous period of at least twelve months).

The ALJ's discussion of Plaintiff's heel fracture sets forth substantial medical evidence demonstrating that Plaintiff did not experience lasting functional limitations from this injury.   Dr. R. Charles Morley treated Plaintiff's heel fracture from July 8, 2003, through December 9, 2003.  Tr. at 151-54.  On September 10, 2003, Plaintiff reported no heel pain and stated that she was able to bear full weight at home.  *Id*. at 151.  Also, treatment records from Athens-Limestone Hospital Physical Therapy Department show that Plaintiff received physical therapy from March 2, 2004, through April 1, 2004.  *Id*. at 415.  On March 29, 2004, she reported that her ankle was feeling much better.   *Id*.   Finally, medical records from Dr. Zia Hassan, dated February 24, 2004, through June 1, 2004, show that Plaintiff was diagnosed with foot pain, likely secondary to degenerative joint disease.  *Id*. at 423.

Plaintiff failed to return for a follow-up visit three months later despite being advised to do so by Dr. Hassan.  *Id*.  No further treatment was performed until over a year later.  *Id*.

Based on the medical evidence, substantial evidence supports the ALJ's determination that Plaintiff's heel fracture was not a "medically determinable physical impairment" as set forth in the regulations.

B.    Treating Physician's Diagnoses.

Plaintiff also contends that the ALJ erred in failing to accord greater weight to the opinion of Plaintiff's treating source, Certified Nurse Practitioner, Ashley Wise ("Nurse Wise").  (Doc. 7 at 6.)  Specifically, Plaintiff argues that the ALJ failed to consider Nurse Wise's assessment of Plaintiff's functional limitations.

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted).  The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon

the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct

the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1546(c).

On April 19, 2005, Nurse Wise stated, in a narrative letter, that Plaintiff had continuous pain secondary to trauma of her left foot and "she cannot tolerate sitting or standing for periods more than 10 to 15 minutes at a time and must keep the left extremity elevated . . . ." Tr. at 427. Nurse Wise also noted that Plaintiff "is unable to tolerate very much activity at all." *Id*. at 424. Plaintiff argues that these opinions are entitled to greater weight.

The Court disagrees. As part of his evaluation of Plaintiff's RFC, the ALJ considered the medical evidence from the physicians and medical professionals who examined and treated Plaintiff, including the opinion of

Nurse Wise. *Id*. at 22. In rejecting her assessment, the ALJ emphasized that Nurse Wise's assessment is "little more than a recitation of the claimant's complaints and not an assessment of limitations and restrictions associated with a medically determinable impairment." *Id*. This determination is supported by the Court's review of the record. For example, Nurse Wise's April 19, 2005 assessment says that, "*[a]ccording to [Plaintiff],* she cannot tolerate sitting or standing for periods more than 10 to 15 minutes at a time . . . ." *Id*. at 427 (emphasis added). In addition, the ALJ determined that "there are no treatment notes or objective findings to support [Nurse Wise's assessment] . . . ." *Id*. at 22.

The ALJ also discussed medical records from Dr. Jack Moore. *Id*. at 22. On October 6, 2003, Dr. Moore examined Plaintiff and found that she was progressing well with her range of motion of the elbow, wrist and left and right upper extremities. *Id*. at 149. During this visit, Plaintiff was also able to put a significant amount of weight on her left leg. *Id*. She did not complain of pain and worked her knee range of motion. *Id*. Further, x-rays also revealed what appeared to be full radiographic healing of Plaintiff's right distal radius and left ulnar shaft. *Id*. Dr. Moore specifically noted that

Plaintiff's left femur healed very well.  *Id*.

Furthermore, the ALJ also evaluated the treatment records of Dr. Zia Hassan, who treated Plaintiff's left foot pain from February 24, 2004, through June 1, 2004.  *Id*. at 423.  On March 1, 2004, Dr. Hassan diagnosed Plaintiff with left foot pain, most likely secondary to degenerative joint disease.  *Id*. Dr. Hassan advised Plaintiff to return for a follow-up visit three months later, however, the records indicate that Plaintiff did not return for her appointment on June 1, 2004.  *Id*. at 423-25.  Plaintiff did not receive further treatment for another year, when she received the medical assessment from Nurse Wise in 2005.

Finally, Plaintiff also received physical therapy from March 2, 2004, through April 1, 2004.  *Id*. at 412-21.  Based on this therapy, on March 29, 2004, Plaintiff reported that her ankle was feeling much better.  *Id*. at 415.

The record reveals that the ALJ specifically considered the assessment of Nurse Wise, and substantial evidence supports his decision to disregard her opinion as inconsistent with medical evidence from several other sources.

C.    Vocational Consideration of Obesity.

Plaintiff also contends that the ALJ failed to consider Plaintiff's obesity

in determining her RFC.  (Doc. 7 at 8.)

SSR 02-01p recognizes that obesity can exacerbate other conditions, that it can cause limitations in all exertional and postural functions; and that it can affect an individual's ability to sustain routine movement and work activity.  The Ruling recognizes that an obese person's body has to work harder at rest, making it harder to perform additional work.

However, it is the functional limitations imposed by a condition, not the mere diagnosis, that determines disability.  *See Higgs v. Bowen*, 880 F.2d 860, 863 (11th Cir. 1998).  In addition, a severe impairment is an impairment which significantly limits a claimant's ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 404.1521(a), 416.920(a)(4)(ii), 416.920(c), 416.921(a); *Bridges v. Bowen*, 815 F.2d 622, 625 (11th Cir. 1987); *McCruter v. Bowen*, 791 F.2d 1544, 1547 ("the severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.")

In support of her position, Plaintiff contends that she has a Body Mass Index ("BMI") of 39, which is consistent with obesity and addressed under SSR

02-1p.  Plaintiff also refers to Nurse Wise's medical statement regarding her limitations.  Tr. at 424-25.  In that statement, Plaintiff asserts that Nurse Wise noted that Plaintiff's impairments are contributing to her weight gain. *Id*.  Nurse Wise also indicated that Plaintiff was not able to tolerate very much activity due to her foot pain.  *Id*.  Plaintiff contends that these arguments support her allegations of impairment, particularly her claim that she is unable to sit or stand for long periods of time and needs to keep her left leg elevated.

The Court disagrees.  First, Plaintiff's reliance on her BMI is not material to the discussion of functional loss.  Specifically, SSR 02-1p provides that the BMI levels "describe the extent of the obesity, but they do not correlate with any specific degree of functional loss."  *See McCruter*, 791 F.2d at 1547.  More importantly, the medical evidence does not suggest that Plaintiff's obesity prevents her from being able to perform basic work related activities.  As discussed in detail above, the medical evidence does not support the notation in Nurse Wise's medical statement.  Instead, substantial evidence supports the ALJ's determination that Plaintiff retains the RFC to perform work at the light level of exertion.

Plaintiff has not presented any other medical evidence indicating functional limitations based on her obesity, therefore, the ALJ did not err in omitting obesity from Plaintiff's "severe" impairments.

D.    Credibility Determination.

Plaintiff asserts that the ALJ's evaluation of her subjective complaints of pain was improper.  Specifically, Ms. Jones alleges that the ALJ failed to report any of Plaintiff's testimony.  *Id.*

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).  To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id*. (internal quotations omitted).

In this case, the ALJ explicitly found that Ms. Jones met the first prong of the Eleventh Circuit's pain standard, but he did not believe that the evidence confirmed the severity of the alleged pain arising from that condition or that Ms. Jones's objectively determined medical condition could

Page 17 of  23

reasonably be expected to give rise to the disabling pain and other limitations alleged by Plaintiff.  Tr. at 24.  In reaching this conclusion, the ALJ considered Plaintiff's allegations of a learning disability and disabling injuries sustained in a vehicle accident.  *Id*. at 24-25.

In rejecting Plaintiff's allegations that a learning disability prevents her from performing basic work activities, the ALJ noted that, following an intellectual assessment in 1980, which indicated that Plaintiff was mentally retarded, the examiner noted that Plaintiff's motivational level was inadequate. *Id*. Further, when Plaintiff was re-examined by Dr. Wood in July 2005, he determined that she was functioning in the borderline level of intellect.  *Id*.  Finally, the ALJ articulated that Plaintiff's work history indicates that she is capable of maintaining a job and has been able to maintain a driver's license. *Id*. Based on this evidence, the ALJ concluded that "although the claimant may have a learning disability, it is not disabling." *Id*.

Regarding Plaintiff's car accident, the ALJ specifically analyzed Plaintiff's allegations of disabling pain.  *Id*.  The ALJ acknowledged that Plaintiff sustained a left femur fracture and right distal radius fracture.  *Id*.

However, the ALJ determined that the medical evidence did not confirm the severity of the alleged pain arising from Plaintiff's injuries.  *Id*.  The ALJ noted that on October 6, 2003, Dr. Moore indicated that Plaintiff was doing very well and progressing well with her range of motion of the elbow, wrist, and left and right upper extremities.  *Id*.  During this visit, Plaintiff had no complaints of pain and was working with her knee range of motion.  *Id*.  Dr. Moore also noted that her left femur was healing very well with callus formation.  *Id*.  Lastly, the ALJ highlighted medical records from Athens-Limestone Hospital Physical Therapy Department which show that in March 2004, Plaintiff reported that her ankle was feeling much better and she was doing very well.  *Id*. at 25.

In addition, despite Plaintiff's allegations of disabling pain, the record reflects little adjustment in Plaintiff's daily activities.  *Id*. at 88, 91, 430. The ALJ may  consider evidence regarding a claimant's daily activities during the fourth step of the sequential evaluation process.  *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987).   Plaintiff stated that she does everything for her four children, including: cooking, cleaning, laundry, and grocery shopping.  *Id*. at 88.  Plaintiff also drives, reads, and attends church

twice weekly.  *Id*. at 91, 430.

The record reveals that the ALJ specifically considered Plaintiff's allegations, and substantial evidence supports his finding that the medical evidence did not confirm the severity of Plaintiff's allegations and that the objectively determined medical condition should not reasonably give rise to the alleged level of pain.

E.    Failure to Develop the Record.

Plaintiff argues that because the ALJ rejected the treating source medical opinion, he did not have adequate medical evidence to evaluate Plaintiff's RFC.  (Doc. 7 at 10.)  Plaintiff also contends that the ALJ did not properly develop the record regarding her mental condition.  *Id*. at 12.

Administrative hearings under the Social Security Act are not adversarial proceedings.  *Richardson v. Perales*, 402 U.S. 389 (1971).  The ALJ has the duty to develop the facts fully and fairly and to probe conscientiously for all of the relevant information.  *Ware v. Schwieker*, 651 F.2d 408, 414 (5th Cir. 1981).  In any case, there must be a showing of prejudice in order to trigger remand for reconsideration; the record must reveal "evidentiary gaps which result in unfairness or clear prejudice."  *Smith v. Schweiker*, 677

F.2d 826, 830 (11th Cir. 1982) (quoting *Ware*, 651 F.2d at 413).

In this case, the record, when viewed as a whole, shows that the ALJ fulfilled his duty to develop the relevant facts of the case, including those favorable to Plaintiff's allegations. Contrary to Plaintiff's argument, the ALJ reviewed the entire medical record, including Plaintiff's treating physicians: Dr. Moore, Dr. Morley, and Dr. Hassan. Tr. at 21-26. Regarding Plaintiff's physical limitations, the ALJ also considered Nurse Wise's alleged limitations, however, as discussed in detail above, the ALJ noted that her limitations were inconsistent with the opinions of other treating physicians. *Id*. at 22, 25. As such, the ALJ properly performed his duty of developing the record regarding Plaintiff's physical impairments.

Plaintiff also argues that the ALJ did not properly develop the record regarding Plaintiff's mental condition. (Doc. 7 at 12-15.) Plaintiff specifically states that the ALJ improperly rejected consultive psychologist Barry Wood's assessment of her ability to respond appropriately to customers and the general public. *Id*.

In this case, Dr. Wood performed a consultive psychological examination of Plaintiff on July 12, 2005. Tr. at 429-31. Based on Dr.

Wood's evaluation, Plaintiff returned a full scale IQ score of 72 on the Wechsler Adult Intelligence Test.  *Id*.  Dr. Wood found Plaintiff with no diagnosis on axis I, and on axis II he found Plaintiff with borderline intellectual functioning.  *Id*.  Dr. Wood also completed a Mental Medical Source Opinion wherein he found Plaintiff with marked functional limitations in her ability to respond appropriately to customers or other members of the general public.  *Id*. at 432-33.  Dr. Wood also found Plaintiff with marked functional limitations in her ability to use judgment in detailed or complex work-related decisions and in the ability to remember and carry out detailed or complex instructions.  *Id*.  In all other work related areas Dr. Wood found Plaintiff with no greater than a mild to moderate functional limitation.  *Id*.

In determining Plaintiff's RFC, the ALJ specifically considered Dr. Wood's findings and resulting limitations.  *Id*. at 21-26.  In his analysis, the ALJ discounted the portion of Dr. Wood's findings holding that Plaintiff possessed marked limitations in her ability to respond appropriately to customers or to members of the general public.  *Id*.  In rejecting this finding, the ALJ stated that Dr. Wood's conclusion appeared to be based on Plaintiff's report that she stays at home and does not go out.  *Id*. at 23.  The ALJ also

noted that Plaintiff's work history required interaction with the general public. *Id*. at 25. The ALJ further found that there were no objective findings to support an impairment that would preclude Plaintiff from performing her past relevant work. *Id*. at 26. As such, the ALJ performed his duty of developing the record and substantial evidence supports his conclusions.

IV.   Conclusion.

Upon review of the administrative record, and considering all of Ms. Jordan's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 8<u>th</u> day of <u>July 2008</u>.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

153671